# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MARIA JOSE ZEPEDA PEREZ,<br><br>Petitioner,<br><br>v.<br><br>ERNESTO SANTACRUZ, JR., et al.,<br><br>Respondents. | No. 2:26-cv-01749-DMG-AYP<br><br>**ORDER GRANTING PETITION AND ISSUING WRIT FOR HABEAS CORPUS** |

## I.   SUMMARY

Petitioner Maria Jose Zepeda Perez ("Petitioner" or "Ms. Zepeda Perez") filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (the "Petition"). Ms. Zepeda Perez is currently in the custody of the Immigration and Customs Enforcement ("ICE") at the Adelanto Detention Facility. Upon her initial entry into the United States in December 2022, immigration authorities apprehended the Petitioner. Following her apprehension in December 2022, she was released on an Order of Recognizance and remained on an Order of Supervision until she was re-detained on May 22, 2025. On the day of her re-detention, on May 22, 2025, she was deemed removable under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I), and a new Notice to Appear was issued.

(Dkt. No. 1-1 at 4.) Petitioner has remained in custody since the time of her re-detention on May 22, 2025.

In this habeas action, Ms. Zepeda Perez challenges the legality of her re-detention, asserting violations of the Due Process Clause of the Fifth Amendment and the Administrative Procedure Act ("APA"). Petitioner alleges that her claims arise from ICE's failure to conduct any individualized assessment or provide meaningful justification for interrupting her longstanding supervised release. Petitioner seeks immediate release and reinstatement of her prior Order of Supervision, along with attorney's fees and costs under the Equal Access to Justice Act.

Consistent with several recent decisions in this District, and having reviewed the record, the Court concludes that Petitioner's re-detention on May 22, 2025—without any evidence of changed circumstances at the time of her re-detention—violates due process. Accordingly, the Court ORDERS that the Petition be granted, and a writ of habeas corpus be issued requiring Ms. Zepeda Perez's immediate release and barring future re-detention absent adequate pre-deprivation notice and a hearing.

## II.    FACTS AND PROCEDURAL HISTORY

Petitioner Maria Jose Zepeda Perez is a native and citizen of Nicaragua. (Dkt. No. 1-1 at 1.) Petitioner entered the United States on or about December 1, 2022. (Dkt. No. 1-1 at 5.) Upon entry, she was apprehended and detained by immigration authorities. *Id.* Shortly thereafter, Immigration and Customs Enforcement ("ICE") exercised its discretion to release Petitioner on an Order of Recognizance and placed her under an Order of Supervision. *Id.* at 6.

From December 2022 through May 22, 2025, Petitioner contends that she resided in the State of New Jersey and remained in full compliance with all conditions of her supervised release. (Dkt. No. 1-1 at 15.) Petitioner represents

that she appeared for all scheduled ICE check-ins, complied with electronic monitoring requirements, and continued to participate in ongoing removal proceedings. *Id.* During this period, nothing in the record reflects that Petitioner had a criminal record or was accused of violating any term or condition of supervision. (Dkt. No. 1-1 at 9.)

On May 22, 2025, Petitioner contends that she appeared for a routine check-in with ICE in New Jersey. (Dkt. No. 1-1 at 15.) On the same day, ICE Enforcement and Removal Operations officers placed Petitioner into custody, and Respondents issued a new Notice to Appear ("NTA") charging Petitioner as removable under INA §§ 212(a)(6)(A)(i) and 212(a)(7)(A)(i)(I). (Dkt. No. 1-1 at 4, 9.) Shortly after her re-detention on May 22, 2025, Petitioner was transferred from New Jersey to the Adelanto ICE Processing Center in Adelanto, California. (Dkt. No. 1 ¶23; Dkt. No. 1-1 at 9.) Petitioner asserts that this transfer removed her from the state in which she had lived for over two years and placed her thousands of miles from her immigration counsel and established support network. (Dkt. No. 1 ¶23.)

While detained, Petitioner filed an application for asylum. (Dkt. No. 1-1 at 15.) Her application was subsequently pretermitted pursuant to the Asylum Cooperative Agreements ("ACAs") with Honduras. (Dkt. No. 1-1 at 11.) Following the pretermission of her asylum application, Petitioner was given a bond hearing on November 19, 2025 from Adelanto, CA and denied release. (Dkt. No. 1-1 at 13.) Petitioner asserts that she timely appealed. (Dkt. No. 1 ¶25.) She has remained detained since the date of her new NTA that was issued on May 22, 2025. (Dkt. No. 1.)

Petitioner filed the instant habeas corpus petition pursuant to 28 U.S.C. § 2241 on February 18, 2026. (Dkt. No. 1.) Respondents filed their Response (the "Response") on March 2, 2026. (Dkt. No. 7.) Petitioner filed a Reply (the "Reply") on March 5, 2026. (Dkt. No. 8.) Both parties have consented to proceed before

3

the Magistrate Judge. The matter is now fully briefed and submitted for decision.

## III.    DISCUSSION

Petitioner argues that her re-detention and ongoing confinement violate the Fifth Amendment's guarantee of due process because Respondents revoked her conditional liberty and re-detained her at a routine check-in without notice, without a meaningful opportunity to be heard, and without any material change in circumstances. Petitioner therefore seeks immediate release, asserting that her re-detention lacked the constitutional safeguards required under the Fifth Amendment Due Process Clause.

The Respondents argue that Petitioner is a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-CV-1873-SSS-BFM, --- F. Supp. 3d ---, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025). Therefore, Respondents contend that any relief available would be limited to an order directing a bond hearing before an IJ under § 1226(a). Respondents do not address Petitioner's due process claim or other claims.

### A. The Court Has Subject Matter Jurisdiction

This Court has subject matter jurisdiction. 28 U.S.C. § 2241 "makes the writ of habeas corpus available to all persons 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Trinidad y Garcia v. Thomas,* 683 F.3d 952, 956 (9th Cir. 2012) (en banc) (quoting 28 U.S.C. § 2241(c)(3)). "The writ of habeas corpus historically provides a remedy to noncitizens challenging executive detention." *Id.* (citing INS v. St. Cyr, 533 U.S. 289, 301–03 (2001)). Accordingly, 8 U.S.C. § 1252(g) does not bar review here. The Court has subject matter jurisdiction over Petitioner's habeas claims because § 2241 remains an available forum for statutory and constitutional challenges to detention. *See Zadvydas v. Davis*, 533 U.S. 678, 688 (2001).

Having established jurisdiction, the Court turns to the merits of

Petitioner's due process claim.

**B. Petitioner's Detention Violates Due Process.**

Petitioner argues that her sudden re-detention—after more than two years of full compliance under an Order of Supervision—violates the Fifth Amendment's guarantee of due process. As an initial matter, the Court observes that Respondents did not respond to Petitioner's due process claim in their Response to the Petition. (Dkt. No. 7.) Consistent with precedent, courts in this Circuit have regarded such silence as a concession. *See e.g.*, *Soleimani v. Larose*, No. 25-CV-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting habeas petition where government's response to the petition failed to respond to numerous claims raised in the petition, including a Fifth Amendment due process claim); *Singh v. Chiang*, No. ED CV 25-3024 FMO (SP), 2025 WL 4058328, at *4 (C.D. Cal. Dec. 15, 2025) (construing government's failure to oppose argument raised by habeas petitioner as a concession). Nevertheless, the Court independently evaluates the merits of Petitioner's due process challenge and concludes that her re-detention violates Fifth Amendment due process.

In evaluating the due process implications of Petitioner's re-detention, the Court is further guided by the reasoning adopted in several recent decisions from this District applying materially similar facts and principles. In *Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, (C.D. Cal. Nov. 6, 2025), the petitioner, similarly to Ms. Zepeda Perez, had lived in the United States for years under parole, complied with all conditions of her parole, maintained a clear criminal record, and continued to participate in ongoing removal proceedings. However, the petitioner was nevertheless taken into ICE custody at a routine appointment without any pre-deprivation notice or hearing. Judge Scarsi concluded that such abrupt re-detention violated due process and

ordered the petitioner's release, enjoining further detention absent constitutionally adequate procedures. *See Cruz*, 2025 WL 4051129 at 2–6.

Likewise, in *Meneses v. Santacruz*, No. 2:25-cv-11206-MCS-PVC, 2025 WL 3481771, at *4 (C.D. Cal. Dec. 2, 2025), the court granted preliminary injunctive relief where ICE re-detained a fully compliant noncitizen without identifying any post-release change in circumstances and without providing notice or an opportunity to be heard before detention.

The Court is also instructed by the reasoning in *Yataco v. Warden, Adelanto Detention Facility*, 2025 WL 4065463 (C.D. Cal. Dec. 26, 2025), which involved a nearly identical sequence of events. There, the petitioner had been living in the community for several years under supervision, had fully complied with all conditions, and was re-detained at a routine check-in without prior notice or any meaningful opportunity to contest his detention. *Yataco*, 2025 WL 4065463, at 1. The court found that such sudden re-detention "without any meaningful pre-deprivation notice or an opportunity to be heard violates due process" and ordered the petitioner's release, prohibiting further detention absent a pre-deprivation hearing. *Id.* at 1–2.

The Fifth Amendment protects all persons in the United States, including noncitizens in removal proceedings, from deprivation of liberty without due process of law. Freedom from physical restraint lies at the core of this protection. *Saravia v. Sessions* reaffirmed this principle in the context of immigration re-detention: once the government has made a prior release determination, it cannot later re-detain the individual without evidence of materially changed circumstances and without providing prompt, adequate process before depriving the person of liberty. 280 F. Supp. 3d 1168, 1194–98 (N.D. Cal. 2017).

Read together with the recent decisions in this District addressing sudden re-detention of compliant noncitizens, these authorities underscore the principle that where a noncitizen has lived in the community under parole or

supervision-based release and has remained fully compliant, the Government may not revoke that conditional liberty without first affording constitutionally sufficient pre-deprivation process or identifying a material intervening change in circumstances.

The Court analyzes Petitioner's due process claim under the familiar *Mathews v. Eldridge* framework, which considers: (1) the private interest at stake; (2) the risk of erroneous deprivation; and (3) the Government's interest. 424 U.S. 319, 335 (1976). Applying these considerations here, each factor weighs strongly in Petitioner's favor.

**1. Private Interest**

Petitioner argues that her re-detention on May 22, 2025, without notice, without a meaningful opportunity to be heard, and without any material change in circumstances, and her ongoing confinement, violates the protections of Fifth Amendment due process.

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall ... be deprived of ... liberty ... without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields

significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032–33(N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F.Supp.3d 1025, 1032–33 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

The Court agrees with Petitioner that due process principles prohibit Respondents from re-detaining her without adequate pre-deprivation process or a material intervening change in circumstances. ICE's authority to re-arrest a noncitizen previously released on bond, recognizance, or supervision is not without limitation. 8 U.S.C. § 1226(b) provides that the Attorney General may revoke a prior release decision and re-arrest the noncitizen, and 8 C.F.R. § 236.1(c)(9) permits revocation "at any time" in the discretion of designated DHS officials. However, Courts and the agency have consistently interpreted these provisions to require a material change in circumstances before a release may be revoked. *See Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981) (a prior bond decision should not be disturbed absent changed circumstances); *Saravia v. Barr*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017), aff'd, 905 F.3d

1137 (9th Cir. 2018) (recognizing DHS practice requiring changed circumstances before re-arrest).

With respect to the first *Mathews* factor, Petitioner has a substantial liberty interest in maintaining her settled life out of custody. Petitioner asserts she has lived in the United States for more than two years, during which time she built ties to her community and counsel in New Jersey. (Dkt. No. 1 ¶¶20, 23.) Petitioner further contends that, after Respondents authorized her to reside in the community beginning in December 2022, she complied with all reporting and monitoring requirements for more than two years, during which time Respondents continued her supervised release in New Jersey, without identifying any violations or changed circumstances at the time of her re-detention on May 22, 2025. (Dkt. No. 8 at 3.) While Petitioner remained subject to supervision during this time, "a person who is in fact free of physical confinement—even if that freedom is lawfully revocable—has a liberty interest that entitles h[er] to constitutional due process before [s]he is re-incarcerated." *Hurd v. D.C., Gov't*, 864 F.3d 671, 683 (D.C. Cir. 2017); *Garro Pinchi*, 792 F. Supp. 3d at 1032 ("Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty.") (collecting cases). Petitioner's release included "an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Morrissey*, 408 U.S. at 482. This conditional liberty is " 'valuable and must be seen as within the protection of the Fourteenth Amendment.' " *Hogarth v. Santacruz*, No. 5:25-cv-09472-SPG-MAR, 2025 WL 3211461, at *7 (C.D. Cal. Oct. 23, 2025) (quoting *Morrissey*, 408 U.S. at 482). The risk to Petitioner's liberty interest is further impacted by the fact the

Petitioner was moved to Adelanto, CA, thousands of miles away from her home in New Jersey.

In consideration of the guiding principles and relevant authority, and the undisputed record of Petitioner's lengthy and compliant period of supervised release, the Court finds that Petitioner's interest in remaining at liberty is both substantial and well-established. Accordingly, the Court concludes that the Due Process Clause protects Petitioner's substantial interest in maintaining her freedom from confinement. *See Cruz*, 2025 WL 4051129 at 2–6; *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2025 WL 3059549 at * 10 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in "approximately four years on parole"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO, 2025 WL 2959319, at *4 (E.D. Cal. Oct. 17, 2025) (same, with respect to "nearly four years" of parole*). See also Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258 at *4 (E.D. Cal. Nov. 20, 2025) (same, with respect to "over two years" on an order of release on recognizance).

### 2. Risk of Erroneous Deprivation

With respect to the second *Mathews* factor, the Court finds that Respondents' failure to articulate any change in circumstance preceding Petitioner's re-detention creates a significant risk of erroneous deprivation. Civil immigration detention is constitutionally permissible only to prevent flight or protect the community from danger. *Zadvydas*, 533 U.S. at 690–91. Yet nothing in the record suggests that Petitioner's continued release threatened either interest at the time of her re-detention on May 22, 2025.

First, Respondents identify no material change in circumstances arising between the time of Petitioner's release in December of 2022 and her re-detention on May 22, 2025.  There are no allegations of criminal conduct, no supervision violations, and no new facts in the record that would lead a

10

reasonable officer to conclude that Petitioner suddenly became a danger or flight risk at the time of her re-detention on May 22, 2025[1]. As both *Matter of Sugay* and *Saravia* make clear, DHS may not revoke a prior release determination absent such materially changed circumstances. *Matter of Sugay* 17 I. & N. Dec. 637, 640 (B.I.A 1981); *Saravia*, 280 F. Supp. 3d at 1196–97.

Second, the procedure employed here creates a substantial risk of error. Petitioner alleges that she was re-arrested at a routine ICE check-in, transported across the country, and provided a custody hearing in Adelanto, CA months after the deprivation of her liberty had already occurred. As *Saravia* explained, due process in this context requires a prompt, pre-deprivation hearing before a neutral decisionmaker at the time of rearrest, not some time long after the liberty loss has already occurred. *Saravia,* 280 F. Supp. 3d at 1194–97. The court in *Cruz v. Lyons*, considering a materially similar re-detention at a routine appointment without prior notice, likewise concluded that such procedures pose a constitutionally unacceptable risk of erroneous deprivation. *See Cruz*, 2025 WL 4051129 at 4.

Petitioner contends that she lived in the United States for more than two years under an Order of Supervision in New Jersey, consistently complied with all ICE requirements, maintained stable community ties, and remained engaged in her removal proceedings. (Dkt. No. 1 ¶¶ 20, 23.) The record reflects that during that entire period, the Respondents repeatedly determined that she could remain safely in the community. (Dkt. No. 1-1 at 9.) Yet, despite Petitioner's unbroken record of compliance, Respondents provided no advance process to assess whether revoking her release would further the permissible

---

[1] The parties did not provide the underlying record for the bond hearing, nor do the parties address it, other than the Petitioner who only asserts that she received a bond hearing, but does not discuss the underlying reasoning. Accordingly, the Court evaluates only the process due at the time of Petitioner's re-detention on May 22, 2025.

11

purposes of immigration detention. (Dkt. No. 1-1 at 15.) Post-deprivation custody hearings do not remedy the lack of constitutionally required pre-deprivation process. On this record, the Court concludes that the risk of erroneous deprivation is unacceptably high.

### 3. Government Interest

As to the third *Mathews* factor, the Government's interests, as reflected in the record before the Court, are insufficient to justify the deprivation of liberty here. Although the Government has a legitimate interest in enforcing the immigration laws, that interest does not overcome the Fifth Amendment's requirement that constitutional procedural safeguards be provided before re-detaining a person who has been safely residing in the community. At the time of her detention on May 22, 2205, Petitioner maintained more than two years of full compliance with her Order of Supervision, regularly reported to ICE, sustained community and family ties in New Jersey, and consistently participated in her removal proceedings. (Dkt. No. 1-1 at 15; Dkt. No. 1 ¶¶ 20, 23.) During that entire period, Respondents identified no danger or risk of flight, and its continued supervision of Petitioner confirmed that less restrictive alternatives adequately served the Government's objectives. (Dkt. No. 1-1 at 9.)

Courts considering materially similar re-detentions have consistently concluded that the Respondents' interest in bypassing pre-deprivation procedures is low. *Cruz v. Lyons* held that, where a noncitizen has long been released and compliant, the Respondents have no meaningful countervailing interest in effecting a sudden re-detention without a hearing, particularly because ICE routinely conducts custody hearings and the administrative burden of providing one is minimal. *See* No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025). Likewise, in *López*, the court emphasized that immigration custody hearings are "routine and impose a minimal cost," and that the government's interest in re-arresting a compliant supervisee without a

hearing is "low." 2025 WL 2959319, at *6 (cleaned up). *Garro Pinchi* similarly held that due process requires the Government to identify an interest "beyond its own administrative practices" to justify depriving an individual of liberty without pre-deprivation protections, and that detention "for its own sake" or due to the absence of established procedures is not a legitimate governmental interest. 792 F. Supp. 3d at 1035–36. Additionally, *Rodriguez Diaz* reiterated that where a noncitizen has long complied with reporting requirements, the Government's interest in re-detaining that individual without a hearing prior to detention is especially weak. 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025).

These decisions align with broader Ninth Circuit authority recognizing that the Government has no legitimate interest in detaining individuals who can be safely supervised through less restrictive means. *See Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017). They also reflect *Saravia*'s conclusion that the administrative burden of providing a brief, neutral hearing to assess any material change in circumstances is minimal, particularly where DHS already conducts such hearings in other detention contexts. 280 F. Supp. 3d at 1199–1200.

Here, Respondents identify no operational, administrative, or public-safety reasons that would have prevented the Respondents from providing Petitioner with pre-deprivation notice or a meaningful opportunity to be heard, nor do they articulate any individualized risk that could justify dispensing with such safeguards. The Respondents' interest in proceeding without adequate pre-deprivation notice or a hearing prior to detention is

13

therefore diminished and unsupported by any new factual development, while Petitioner's liberty interest remains substantial.

Accordingly, the third *Mathews* factor weighs decisively in Petitioner's favor.

In sum, Petitioner has a strong interest in remaining free from confinement, there is a significant risk that the Respondents' lack of constitutionally adequate procedures has resulted in Petitioner's unnecessary detention, and the Government's interest in refusing to provide such process is minimal. The Court therefore concludes that the Respondents' re-detention of Petitioner on May 22, 2025, without adequate pre-deprivation process violated due process and that she should be released forthwith.

**C. § 1226 Governs Petitioner's Detention and Respondents' Proposed § 1226(a) Bond Hearing Remedy is Moot.**

Respondents' only response to the Petition is that Petitioner appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista* and that "to the extent Petitioner would be entitled to any remedy…it would be…under Section 1226(a)." (Dkt. No. 7.) Accordingly, Respondents contend that, to the extent Petitioner would be entitled to any remedy, it would be limited to a bond hearing before an IJ under 8 U.S.C. § 1226(a). Although Respondents correctly note that individuals detained under § 1226(a) are entitled to a bond hearing, that proposition is immaterial here. "Any subsequent bond hearing 'does not sufficiently address the lawfulness of petitioner's re-detention in the first place.'" *Hernandez v. Lyons*, No. 2:25-cv-05376-FWS-AGR, 2025 WL 3191822, at \*6 (C.D. Cal. June 18, 2025). Petitioner has received a bond hearing and is not seek a bond hearing as a remedy and, as such, whether Petitioner is a member of the *Maldonado Bautista* class is inconsequential and moot.

14

**D. Petitioner's Remaining Claims**

Because the Court concludes that Petitioner is entitled to release on due-process grounds, it declines to reach her alternative arguments, including those concerning relief under the Administrative Procedure Act.

## IV.   CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner's immediate release subject to  conditions of supervision that existed prior to her detention on May 22, 2025, along with her personal belongings, including her identification, work permits, and other documentation, and preventing her re-detention absent pre-deprivation notice and a constitutionally adequate pre-deprivation hearing at which the Government must justify the need to confine her prior to her re-detention; and (3) the parties shall file a joint status report no later than seven (7) days from the date of this Order confirming that Petitioner has been released from Respondents' custody.  Additionally, the Petitioner and the Court shall be provided with at least three (3) days notice prior to Petitioner being removed from this jurisdiction.

IT IS SO ORDERED.

DATED:   April 9, 2026

_____
ANNA Y. PARK
UNITED STATES MAGISTRATE JUDGE

15